UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CARINA BOUTSIKAKIS, in her individual
capacity and on behalf of others
similarly situated,

                Plaintiff,                            REPORT AND
                                                  RECOMMENDATION

       -against-                               15 CV 5833 (DG)(RML)

TRI-BOROUGH HOME CARE, LTD.,

                Defendant.
------------------------------------------------------X

LEVY, United States Magistrate Judge:

By order dated October 28, 2022, the Honorable Diane Gujarati, United States

District Judge, referred the parties' cross-motions for summary judgment to me for report and

recommendation.  For the reasons explained below, I respectfully recommend that both parties'

motions be granted in part and denied in part.

## BACKGROUND AND FACTS

Plaintiff Carina Boutsikakis ("plaintiff") brought this action on October 9, 2015

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York

Labor Law ("NYLL") to recover unpaid wages and other damages.  (See Complaint, dated Oct.

9, 2015 ("Compl."), Dkt. No. 1.)  Plaintiff filed two amended complaints thereafter to add

collective action and retaliation allegations.  (See Amended Complaint, filed Sept. 14, 2016, Dkt.

No. 19; Second Amended Complaint, filed Aug. 18, 2017 ("Second Am. Compl."), Dkt. No. 31.)

The following facts, which are undisputed unless otherwise stated, are taken from the parties'

Rule 56.1 statements, the exhibits filed by the parties with their summary judgment briefing, and

relevant portions of the record.

Plaintiff and six subsequent "opt in" plaintiffs (together, "plaintiffs") worked for defendant Tri-Borough Home Care, Ltd. ("defendant") as registered pediatric private duty nurses and provided care to patients in their homes.  (Plaintiffs' Rule 56.1 Statement, dated Mar. 10, 2022 ("Pls.' Rule 56.1 Statement"), Dkt. No. 96-2, ¶ 1; see also Defendant's Revised Rule 56.1 Statement, dated Mar. 22, 2022 ("Def.'s Rule 56.1 Statement"), Dkt. No. 99-2, ¶ 1; Second Am. Compl. ¶¶ 2, 14-15.)  Plaintiffs allege that defendant paid them hourly rates of $24.00 for standard cases and $30.00 for higher priority cases.  (Second Am. Compl. ¶¶ 20, 21.)[1]

Plaintiffs were scheduled for certain designated shifts and were required to log their work hours into defendant's Electronic Visit Verification ("EVV") system by calling in and creating time-in and time-out data that was collected in defendant's software called "HHA Exchange."  (Pls.' Rule 56.1 Statement ¶ 2.)  The scheduled time for each shift was also maintained in this database.  (Id.)  Defendant was required by federal law to maintain the EVV system by which nurses were expected to call in at the start and end of their shifts from their patients' homes.  (Id. ¶ 3.)  The EVV timekeeping data was then transferred to and kept in defendant's HHA Exchange software.  (Id. ¶ 4.)  Defendant's Employee Handbook states:

> As field staff, you must call in and out from each assigned patient's home telephone on a daily basis.  These telephone calls will generate your paycheck. . . . All field staff is required to submit corresponding paperwork weekly. All paperwork must be received in the office by Tuesday 12:00 noon for assignments performed in the previous calendar workweek. . . . Properly completed paperwork (for the prior week's assignments), submitted by the Tuesday noon deadline will be processed for payroll in the same week as received.

(Employee Handbook, attached as Ex. T to Def.'s Rule 56.1 Statement, Dkt. No. 97-7, at 9.)

---

[1] Defendant disputes this.  (See Second Amended Answer with Counterclaim, filed Sept. 13, 2017 ("Second Am. Answer"), Dkt. No. 39, ¶ 3 (denying the allegations in paragraph 21 of the Second Amended Complaint).)

In addition to the EVV system, defendant maintained a schedule indicating when nurses were supposed to be at certain locations, with oversight by a nurse supervisor, a coordinator, the nurse on the preceding shift, and/or the pediatric patient's family.  (Pls.' Rule 56.1 Statement ¶ 6.)  Furthermore, nurses were expected to keep detailed handwritten patient care notes on "nurses' notes."  (Id. ¶ 7.)   The nurses' notes are triplicate forms – one copy was to be submitted to defendant, one was to stay at the patient's home in a binder, and one was for the nurse to keep for his or her records.  (Id.)  These forms contained details about treatments administered, the child's condition, and other relevant medical information.  (Id.)  Nurses would also note their shift times on these forms.  (Id.)

Although the Employee Handbook indicates that all field staff must submit paperwork by Tuesday at noon for assignments performed in the previous calendar workweek, plaintiffs and defendant agree that defendant had "a rule that the nurses were to submit their notes by 10:00A.M. on the Tuesday of the week following care, ending in Friday."  (Id. ¶ 8; Def.'s Rule 56.1 Statement ¶ 8.)  Defendant required nurses to submit the original, handwritten copy of their nurses' notes; electronic submission was not acceptable.  (Pls.' Rule 56.1 Statement ¶ 9.)  If defendant did not have the nurses' notes from a patient visit, it could not seek payment or reimbursement for that visit.  (Id. ¶ 10.)  Defendant therefore would not pay the nurses for the time they had worked until it received their nurses' notes, and if a nurse did not turn in the notes for a few weeks or a month, the nurse would not be paid for the time he or she had worked until those notes were received.  (Id. ¶¶ 11, 12.)

Some nurses worked more than forty hours at least some workweeks.  (Id. ¶ 14.) In approximately April 2015, defendant's administrator of the Family Pediatric division, Chantale Michel, decided to discontinue payment of time-and-a-half wages for overtime hours

worked after allegedly calling the New York State Department of Labor ("DOL") to confirm that it was "the right thing to do." (Id. ¶ 19.) Plaintiffs assert that from April 2015 to August 2018, defendant paid a "straight time" rather than an overtime rate for hours worked over forty per workweek. (Id. ¶ 15.) Defendant does not dispute that it did not pay overtime wages for this period but asserts that the final day for which no overtime was paid was July 17, 2018. (Def.'s Rule 56.1 Statement ¶ 15.)

Plaintiffs move for summary judgment on defendant's liability for the underpayment of overtime wages, late payment of wages, and retaliation. (Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, dated Feb. 28, 2022 ("Pls.' Mem."), Dkt. No. 96-1, at 1-2.) Defendant cross-moves for summary judgment to dismiss plaintiffs' first, second, third, and fourth causes of action. (Defendant's Cross-Notice of Motion for Summary Judgment; and in Opposition to Plaintiff's Motion for Summary Judgment, filed Apr. 4, 2022 ("Def.'s Cross Mot."), Dkt. No. 97-1.)

### STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material where it "might affect the outcome of the suit under the governing law" and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party carries the initial burden of showing that there is no genuine dispute of material fact. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018). However, where the burden of proof at trial would fall on the non-moving party, the moving party may shift its initial burden by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the

4

nonmovant's claim." Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

          Once the moving party has satisfied its initial burden, the non-moving party must put forth specific facts showing that there is a genuine issue of material fact to be tried. Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996). While the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) (citations and internal quotation marks omitted). If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

### DISCUSSION

### I. **Plaintiffs' Motion for Summary Judgment**

          Plaintiffs contend that there are no disputes of material fact that would preclude resolution of the following issues: (1) defendant failed to pay plaintiffs at a time-and-a-half rate for overtime hours worked during a certain period; (2) defendant should have paid plaintiffs for

overtime work at a "blended rate"; (3) defendant made illegal deductions to wages or late payments; (4) liquidated damages are appropriate; (5) defendant's conduct was willful; (6) defendant's counterclaim should be dismissed and was retaliatory; and (7) damages should be bifurcated. (Pls.' Mem. at 1.) I will discuss each claim in turn.

### 1. Overtime Wages

Plaintiffs move for summary judgment on defendant's liability for its underpayment of overtime wages. The Honorable Kiyo A. Matsumoto, United States District Judge, previously ruled that the hourly-paid nurse plaintiffs are not subject to the FLSA's professional exemption, and thus are owed unpaid time-and-a-half wages for their overtime hours worked. (See Memorandum and Order, dated July 17, 2018, Dkt. No. 61, at 17.) Defendant's liability for unpaid overtime wages is undisputed. However, defendant asserts that it is only liable for unpaid overtime wages from April 3, 2015 to July 17, 2018, instead of "August 2018" as alleged by plaintiffs. (Def.'s Rule 56.1 Statement ¶ 15; see also Affidavit of Chantale Michel, sworn to Mar. 15, 2022 ("Michel Aff."), Dkt. No. 97-6, ¶ 6; Pl.'s Rule 56.1 Statement ¶ 15.) While there is a dispute over the relevant period, there is no genuine dispute of material fact related to defendant's liability for its failure to pay overtime wages. Accordingly, I recommend granting plaintiffs' motion for summary judgment on defendant's liability for unpaid overtime wages.

### 2. "Blended Rates"

Plaintiffs move for summary judgment on the claim that defendant should have paid them a "blended rate" for any overtime occurring in workweeks during which they worked at different hourly rates. (Pls.' Mem. at 2.) "Although the FLSA does not explicitly define the regular rate of pay for purposes of calculating overtime compensation, when an employee works

6

at two different rates of pay within the same week, the Department of Labor ("DOL") and courts have interpreted the statute to include a requirement that employers base overtime on an average of the various pay rates."  Estrella v. P.R. Painting Corp., No. 06 CV 717, 2007 WL 9709943, at *6 (E.D.N.Y. Apr. 21, 2007).  Specifically, "[w]here an employee works at two or more different jobs which have different hourly rates, the Wage and Hour Administrator has determined that the rate upon which overtime must be paid is the weighted average of the rates at which he [or she] works."  Hodgson v. Penn Packing Co., 335 F. Supp. 1015, 1021 (E.D. Pa. 1971); see also Chao v. Akron Insulation & Supply, Inc., No. 04 CV 443, 2005 U.S. Dist. LEXIS 9331, at *38 (N.D. Ohio May 5, 2005) ("Even when Defendants paid overtime compensation, they sometimes paid overtime at the wrong rate, paying overtime compensation at the lower of the employees' two rates rather than at the blended rate").  According to the DOL:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay . . . have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115.

Defendant does not dispute that it did not pay "blended rates" for any overtime hours worked.  (Def.'s Rule 56.1 Statement ¶ 16.)  However, defendant contests plaintiffs' claim that some nurses worked for more than one different hourly rate in the same workweek and should have been paid a "blended" overtime rate on the ground that this is an argument in law rather than fact.  (See id.; Pls.' Rule 56.1 Statement ¶ 16.)  Additionally, defendant cites to the affidavit of Chantale Michel where she asserts that one individual registered nurse, Marilyn Dolce, worked at two identical and seamless positions.  (Def.'s Rule 56.1 Statement ¶ 16; see

7

<u>also</u> Michel Aff. ¶¶ 13, 14.)  Specifically, Chantale Michel's affidavit states that Marilyn Dolce cared for and supervised the same infant patient at two separate locations – at the infant's school and at the infant's home – and that the difference in her rate of compensation was because the school and the private insurance company paid defendant different rates which were then reflected in the hourly rate Ms. Dolce received when accompanying the infant at school versus at the infant's home.  (Michel Aff. ¶¶ 13, 14.)  Although it does not expressly indicate, the court assumes that defendant means to argue that Marilyn Dolce was not performing different work that entitled her to a "blended" overtime rate.

Looking solely at defendant's payroll records, it is impossible to determine which dates of service the nurses were being paid for, but the records reflect that the nurses were paid at multiple rates during certain weeks.  (Pls.' Rule 56.1 Statement ¶ 17; Def.'s Rule 56.1 Statement ¶ 17; <u>see also</u> Payroll Documents, attached as Ex. I to Pls.' Mem., Dkt. No. 96-13.)  Defendant has produced spreadsheets purporting to show the date of service rendered versus the date of payment.  (Pls.' Rule 56.1 Statement ¶ 18; Def.'s Rule 56.1 Statement ¶ 18; <u>see also</u> Payroll Spreadsheets, attached as Exs. I, J, K, L, M, N to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment; and in Support of Defendant's Cross-Motion for Summary Judgment, dated Mar. 21, 2022 ("Def.'s Mem.), Dkt. No. 97-6.)  However, these spreadsheets do not indicate the nurses' pay rates or the type of work performed.

Nevertheless, drawing all permissible factual inferences in favor of defendant, the exhibits accompanying the parties' submissions appear to indicate a dispute of material fact related to whether the nurses performed different work and were entitled to receive a "blended rate" for any overtime hours worked.  Accordingly, I recommend that summary judgment be denied on this issue.

3.  <u>Deduction to Wages & Prompt Payment</u>

Plaintiffs move for summary judgment on defendant's liability for its failure to promptly pay them for work performed.  (Pls.' Mem. at 3.)  Specifically, plaintiffs claim that defendant's payment practice constituted an impermissible deduction pursuant to NYLL § 193 and a violation of the FLSA's prompt payment requirements.  (<u>Id.</u> at 4, 7.)[2]  Plaintiffs were frequently paid late for work they had performed, which defendant justified based on its ineligibility to receive payment for the nurses' services rendered until it received their nurses' notes.  (<u>Id.</u> at 3; <u>see also</u> Pls.' Rule 56.1 Statement ¶¶ 11, 12; Def.'s Rule 56.1 Statement ¶¶ 11, 12.)  I will address whether summary judgment should be granted on defendant's liability under both statutes.

a.  <u>NYLL</u>

Under Section 193 of the NYLL, no employer may make any deduction from the wages of an employee except for deductions which

> are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; . . . are expressly authorized in writing by the employee and are for the benefit of the employee[;] . . . are related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer[;] . . . [or are for] repayment of advances of salary or wages made by the employer to the employee.

N.Y. Lab. L. § 193(1).  "Employers are thus forbidden from making 'deductions for spoilage or breakage; . . . deductions for cash shortages or losses; [or imposing] fines or penalties for lateness, misconduct or quitting by an employee without notice.'"  <u>Lewis v. Alert Ambulette Serv. Corp.</u>, No. 11 CV 442, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012) (quoting N.Y.

---

[2] Plaintiffs do not seek duplicative damages and instead offer the FLSA argument as an alternative legal theory.  (Pls.' Mem. at 7.)

9

COMP. CODES R. & REGS. tit. 12, § 142-2.10).  Section 193 was amended in 2021 with the "No Wage Theft Loophole Act" to clarify that "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements."  2021 N.Y. Laws ch. 397 § 1; N.Y. LAB. L. § 193(5).  However, "the prevailing view is that a wholesale withholding of [wages] is not a 'deduction' within the meaning of Labor Law § 193[.]"  Hensel v. Bestpass, Inc., 77 Misc. 3d 1011, 1018 (N.Y. Sup. Ct. 2022) (citations and quotation marks omitted); see also Kahlon v. Project Verte Inc., No. 20 CV 3774, 2022 WL 861638, *8 (S.D.N.Y. Mar. 23, 2022) (stating that Section 193 prohibits unlawful deductions from wages in contrast with a failure to pay wages altogether); Dreni v. PrinterOn Am. Corp., 486 F. Supp. 3d 712, 728 (S.D.N.Y. 2020) ("The law in this district is clear that a failure to pay, or a withholding, of wages does not constitute a "deduction" within the meaning of § 193.").  Furthermore, courts in this district have declined to apply the No Wage Theft Loophole Act retroactively to conduct that occurred before the amendment.  See, e.g., Fersel v. Paramount Med. Servs., P.C., No. 18 CV 2448, 2022 WL 14813738, at *4 (E.D.N.Y. Oct. 26, 2022); Kahlon, 2022 WL 861638, *8.

Plaintiffs assert that defendant's policy of intentionally and willfully refusing to pay nurses for the time they worked until defendant acknowledged receipt of the nurses' notes constituted an unlawful deduction to wages under the NYLL § 193.  (Pls.' Mem. at 6.)  Additionally, plaintiffs argue that defendant's payment withholding "was a punishment for failure to abide by Defendant's rule of remitting the notes by a certain time, and/or an attempt for the employer to offset its own losses."  (Id.)  Plaintiffs assert that even if they are subject to the NYLL's professional capacity exemption, they are still entitled to certain protections under the NYLL, such as the protection against impermissible wage deductions.  (Pls.' Mem. at 5; see also Plaintiffs' Reply in Further Support of their Motion for Summary Judgment and Response to

Defendant's Cross-Motion for Summary Judgment, dated Apr. 4, 2022 ("Pls.' Reply"), Dkt. No. 98, at 3.)  Defendant maintains that the registered nurses are excluded from the class of "employee" as learned professionals under the NYLL, but does not address plaintiffs' argument that, even if they are exempt from certain portions of the NYLL, they are not exempt from all protections under the NYLL including the protection against deductions from their wages. (Def.'s Mem. at 2.)

Notwithstanding arguments related to plaintiffs' exempt or non-exempt status under the NYLL, plaintiffs' allegations do not constitute a violation of Section 193.  Plaintiffs allege that defendant "withheld pay from Plaintiff and others similarly situated."  (Second Am. Compl. ¶ 52.)  As discussed above, such a "failure to pay" or "withholding" does not constitute an impermissible deduction under Section 193 because the alleged wage deduction violations took place well before Section 193 was amended in 2021 and courts in this district have declined to apply the No Wage Theft Loophole Act retroactively.  Therefore, I recommend that summary judgment on plaintiffs' claim that defendant made illegal deductions to wages under the NYLL be denied, as they are not entitled to judgment on this claim as a matter of law.

b.  FLSA

Plaintiffs move for summary judgment on their claim that defendant's pay practices violated the FLSA's prompt payment requirements.  (Pls.' Mem. at 7.)  Defendant does not address this argument in its submissions.  As previously discussed, Judge Matsumoto previously ruled that plaintiffs are not subject to the FLSA's professional exemption.

Although it does not specify when wages must be paid, "[c]ourts have long interpreted [the FLSA] to include a prompt payment requirement."  Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023) (quoting Coley v. Vannguard Urb.

Improvement Ass'n, Inc., No. 12 CV 5565, 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016)); see also Rogers v. City of Troy, N.Y., 148 F.3d 52, 55 (2d Cir. 1998) ("although the FLSA does include a prompt payment requirement, that requirement is not violated when an employer changes its pay schedule so long as this change: (a) is made for a legitimate business purpose; (b) does not result in an unreasonably long delay in payment; (c) is intended to be permanent; and (d) does not result in violation of the substantive minimum wage or overtime provisions of the FLSA.")). "Under the statute, late wages are considered a form of unpaid wages." Rosenbaum, 2023 WL 2305960, at *5.

The FLSA "provides that employers who violate this provision of the FLSA 'shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages.'" Id. (quoting 29 U.S.C. § 216(a)). However, courts in this Circuit have generally rejected plaintiffs' attempts to recover unpaid wages under the FLSA when such claims fall outside of the FLSA's minimum wage and overtime provisions. Hosseini v. Miilkiina LLC, No. 22 CV 1459, 2023 WL 2136390, at *4 (S.D.N.Y. Feb. 21, 2023) (citing Barone v. Inspire Summits LLC, No. 20 CV 5978, 2022 WL 3139124, at *2 (E.D.N.Y. Aug. 4, 2022) ("The trouble for Plaintiffs is that the FLSA permits a claim for a failure to promptly pay *minimum wages*—not agreed-upon wages." (emphasis in original)); McCormick v. Phinizy & Phebe Handmade LLC, No. 18 CV 916, 2020 WL 13572189, at *5 (E.D.N.Y. Aug. 17, 2020) (denying a plaintiff's unpaid wages claim because the plaintiff sought to recover the salary contracted for rather than minimum wages)).

Here, plaintiffs seek unpaid overtime wages but not minimum wages because they were all paid rates above the federal and state minimum wage rates. Thus, they were only entitled to prompt payment of their overtime wages. Defendant would not pay the nurses for

time worked until it had received their nurses' notes, and if a nurse did not submit the notes for a period of time, defendant would delay paying wages owed for the time worked until the notes were received.  (Pls.' Rule 56.1 Statement ¶¶ 11, 12.)  Defendant does not dispute this.  (Def.'s Rule 56.1 Statement ¶¶ 11, 12.)  Thus, there is no genuine dispute of material fact and plaintiffs are entitled to judgment as a matter of law on the issue of prompt payment under the FLSA as it relates to their unpaid overtime wages.  Accordingly, I recommend that summary judgment be granted on this claim.

### 4.  Liquidated Damages & Willfulness

Plaintiffs move for summary judgment on the related issues of liquidated damages and defendant's willfulness.  (Pls.' Mem. at 8, 11.)  "Both the FLSA and the NYLL provide for liquidated damages."  Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020).  Under the FLSA, "[l]iquidated damages are mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary."  Id. (citing 29 U.S.C. § 260).  The employer bears the burden of establishing that liquidated damages should not be awarded.  Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 70-71 (2d Cir. 1997).  To avoid mandatory liquidated damages, an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable."  Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).

When a defendant's violations are willful, the two-year statute of limitations is extended to three years under the FLSA.  29 U.S.C. § 255(a).  "[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or

13

showed reckless disregard for the matter of whether its conduct was prohibited by the statute."
Campbell v. City of New York, No. 16 CV 8719, 2021 WL 826899, at *9 (S.D.N.Y. Mar. 4,
2021) (quoting Parada v. Banco Indus. De Venez., 753 F.3d 62, 71 (2d Cir. 2014)).  "The burden
of demonstrating willfulness lies with the Plaintiffs."  Rojas v. Splendor Landscape Designs Ltd.,
268 F. Supp. 3d 405, 411 (E.D.N.Y. 2017).

      Here, Chantale Michel testified both at her deposition and in her affidavit that she
sought the advice of a representative of the New York State Department of Labor and was told
on or about July 17, 2015 that registered nurses were not entitled to overtime wages.  (Def.'s
Mem. at 3; Michel Aff. ¶ 9.)  Furthermore, defendant asserts that it believed in good faith that it
was exempt as a participant in the Medicaid waiver program Care at Home for Physically
Disabled Children ("CAH 1/11") and New York State laws as they pertain to registered nurses,
and that it instituted an action before Judge Matsumoto to confirm this belief.  (Def.'s Rule 56.1
Statement ¶ 20.)  Defendant further notes that on the same day that Judge Matsumoto ruled that
plaintiffs were in fact entitled to overtime wages, defendant recommenced the payment of
overtime wages.  (Id.)

      Plaintiffs note that "[w]hile the analytical framework is different, the evidence
regarding willfulness and the good faith basis defense overlaps both."  (Pls.' Mem. at 12.)
Plaintiffs dispute the credibility of defendant's assertions regarding its alleged attempt to contact
the New York Department of Labor and contend that, even if true, this attempt does not rise to
the level of a good faith defense.  (Id. at 10.)  Additionally, plaintiffs argue that defendant
showed reckless disregard as to whether its pay practices violated the FLSA.  (Id.)  The present
record consists of conflicting witness declarations, whose weight and credibility are not for the
court to determine at the summary judgment stage.  See D'Amato v. Five Star Reporting, Inc., 80

F. Supp. 3d 395, 423 (E.D.N.Y. 2015) (citing Graves v. Chubb & Son, Inc., No. 12 CV 568, 2014 WL 1289464 at *7 (D. Conn. Mar. 31, 2014) ("The present record largely consists of such affidavits and deposition testimony, whose weight and credibility it is not for the court to determine at the summary judgment stage.")).  There exists a genuine dispute of material fact regarding defendant's good faith, objective reasonableness, and willfulness.  Therefore, I recommend that summary judgment on liquidated damages and defendant's willfulness be denied.

>    5.  Defendant's Counterclaim

Plaintiffs move for summary judgment on defendant's counterclaim and seek to: (1) dismiss the counterclaim on the grounds that it is legally and factually baseless, and (2) establish defendant's liability for retaliation.  (Pls.' Mem. at 12, 14.)  Defendant's counterclaim alleges that it was damaged in the amount of $7,007.50 because it was unable to seek reimbursement due to plaintiff Boutsikakis' untimely submission of her nurses' notes.  (Second Am. Answer ¶¶ 60-62.)[3]  Plaintiff submitted the missing notes in question after being ordered to do so by Judge Matsumoto.  (Id. ¶ 60; see also Order, dated Mar. 4, 2016.)  Defendant asserts that it was unable to claim compensation after it had received the missing notes, because the period required of it to submit the notes expired sixty days from the date that plaintiff should have submitted the notes to the defendant.  (Id. ¶ 62.)

---

[3] Plaintiff Boutsikakis alleges, and defendant disputes, that she was not paid for ten days of service based on defendant's non-receipt of nurses' notes for those days.  (See Pls.' Rule 56.1 Statement ¶ 13; Def.'s Rule 56.1 Statement ¶ 13.)  In its Second Amended Answer, defendant asserts that plaintiff "refused of her own volition" to submit the notes in question.  (Second Amended Answer with Counterclaim, filed Sept. 13, 2017 ("Second Am. Answer"), Dkt. No. 39, ¶ 59.)

a.  Legal and Factual Insufficiency

Plaintiffs argue that defendant's counterclaim should be dismissed because it is legally and factually baseless.  (Pls.' Mem. at 12.)  Judge Matsumoto previously denied plaintiffs' motion to dismiss the counterclaim by construing it as a breach of contract claim in which "defendant has alleged that the employee handbook set forth the terms of the employment agreement."  (Memorandum and Order, dated Aug. 14, 2017, Dkt. No. 30, at 15-16.)  Defendant argues that this decision should "be deemed the law of the case."  (Def.'s Mem. at 4.)  However, in denying the motion to dismiss the counterclaim, Judge Matsumoto noted that "[a]lthough evidence may later establish that the employee handbook did not create an employment agreement, such evidence is not before the court now."  (Id. at 16.)  That evidence is now before the court.

To establish a claim for breach of contract under New York law, a plaintiff need only demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 177 (2d Cir. 2004) (internal citation omitted); Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) (same).  Under New York law, in order to sufficiently plead a breach of contract, "a plaintiff must allege specific provisions within a contract upon which the breach of contract claim is based."  Boehner v. Heise, 734 F. Supp. 2d 389, 408 (S.D.N.Y. 2010) (citing Sheridan v. Trs. of Columbia Univ. in City of New York, 745 N.Y.S.2d 18 (1st Dep't 2002)).  Furthermore, in a breach-of-contract action, summary judgment is appropriate where the language of the contract is "wholly unambiguous."  Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 467-68 (S.D.N.Y. 2007), clarified on denial of reconsideration, No. 02 CV 4258, 2007 WL 2265579

16

(S.D.N.Y. Aug. 6, 2007) (quoting Mellon Bank, N.A. v. United Bank Corp. of N.Y., 31 F.3d 113, 115 (2d Cir. 1994)).  "The question of whether a contract is clear or ambiguous is to be decided by the court as a matter of law."  Mellon Bank, N.A., 31 F.3d at 115; accord Cable Sci. Corp. v. Rochdale Vill., Inc., 920 F.2d 147, 151 (2d Cir. 1990) ("Because in a contract dispute, intent is all, the language used must be examined first to see if it is ambiguous.").

Policies in a personnel manual specifying the employer's practices with respect to the employment relationship may become a part of the employment contract.  See, e.g., Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 87-89 (2d Cir. 1998).  However, to establish that such policies are a part of the employment contract, a litigant alleging a breach must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment.  See Lobosco v. New York Tel., 751 N.E.2d 462, 465 (N.Y. 2001).  "The New York Court of Appeals admonishes that 'routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements.'"  Jain v. McGraw-Hill Cos., Inc., 827 F. Supp. 2d 272, 278 (S.D.N.Y. 2011), aff'd, 506 F. App'x 47 (2d Cir. 2012) (quoting Lobosco, 751 N.E.2d at 465).

Plaintiffs assert that the Employee Handbook did not form an employment contract because the cover page of the Employee Handbook states that "[t]he intent of these policies is not to be implied as a CONTRACT of employment with an employee or an applicant to this agency."  (Pls.' Rule 56.1 Statement ¶ 23; see also Employee Handbook.)  Defendant disputes this assertion on the ground that it is an issue of law rather than fact, and points to the

17

Employee Handbook's recognition that plaintiffs were at-will employees to support this argument.  (Def.'s Rule 56.1 Statement ¶ 23.)

There is no genuine dispute of material fact related to defendant's counterclaim and plaintiffs are entitled to judgment as a matter of law.  The language of the Employee Handbook is wholly unambiguous – it expressly disclaims itself from forming a contract.  See, e.g., Kunda v. Caremark PhC, LLC, 119 F. Supp. 3d 56, 61-62 (E.D.N.Y. 2015) (dismissing breach of contract claim predicated on failure to follow internal policies because the employment handbook stated that "the contents of this handbook are guidelines only" and "neither this handbook nor any other company guidelines, policies or practices create an employment contract.").[4]  Furthermore, the "employment at-will" provision relied upon by defendant specifically states that

> While we hope our relationship will be mutually beneficial, it should be recognized that neither you nor the Agency has entered into any contract of employment for a definite term, express or implied.  Your employment with the Agency is voluntary. . . . Similarly, the Agency is free to conclude the employment relationship ay any time, with or without notice for any reason not prohibited by law.

(Employee Handbook at 4.)  This contradicts defendant's claim that there was an employment contract between plaintiffs and defendant.  I therefore recommend that plaintiffs' motion for summary judgment be granted with respect to defendant's counterclaim.

b.  Retaliation

Plaintiffs assert that "because [defendant's counterclaim] was frivolous, groundless, and designed to intimidate or punish the Plaintiff in response to her decision to file

---

[4] Defendant also fails to allege its own performance despite Judge Matsumoto's previous indication that it "is unclear whether defendant sufficiently alleges its own performance." (Memorandum and Order, dated Aug. 14, 2017, Dkt. No. 30, at 17.)

an amended complaint containing collective action allegations, there should be a finding of liability for retaliation." (Pls.' Mem. at 14.)

        At the summary judgment stage, courts address FLSA retaliation claims under the "burden-shifting" framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973). See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 471 (S.D.N.Y. 2008) (citations omitted). To establish a prima facie case of retaliation, a plaintiff must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010). The burden of proof at the prima facie stage is *de minimis*. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If the plaintiff meets this burden, the defendant must offer a legitimate non-retaliatory reason for its actions. See Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is mere pretext for retaliation. See Weinstock, 224 F.3d at 42.

        Plaintiffs assert, and defendant does not dispute, that amending an FLSA lawsuit in federal court to include collective action allegations constitutes a protected activity. Thus, plaintiffs have established the first element of a prima facie case of retaliation. Courts in this Circuit are clear that "the filing of a baseless lawsuit can be an adverse action" within the meaning of FLSA retaliation. Nunez v. Metro. Learning Inst., Inc., No. 18 CV 1757, 2019 WL 5457731, at *1 (E.D.N.Y. Oct. 24, 2019) (citing Romero v. Bestcare, Inc., No. 15 CV 7397, 2018 WL 1702001, at *5 (E.D.N.Y. Feb. 28 2018), report and recommendation adopted, 2018

WL 1701948 (E.D.N.Y. Mar. 31, 2018)); accord Chan v. Big Geyser, Inc., No. 17 CV 6473, 2018 WL 4168967, at *11 (S.D.N.Y. Aug. 30, 2018) ("[C]ourts have held that filing baseless counterclaims against FLSA plaintiffs 'can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation.'") (quoting Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013)).  As discussed above, defendant's counterclaim is legally baseless.  Therefore, the counterclaim constitutes an adverse employment action and plaintiffs have established the second prong of a prima facie case of retaliation.

Finally, causation can be proven "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence." Natofsky v. City of N.Y., 921 F.3d 337, 353 (2d Cir. 2019).  The Second Circuit has "previously found the passage of up to six months between an adverse action and protected activity sufficient to permit an inference of causation." Specht v. City of N.Y., 15 F.4th 594, 605 (2d Cir. 2021) ("We hold that the [five month] time period between [the adverse action] and [plaintiff's] protected conduct is sufficient to permit an inference of causation.").  Defendant did not include a counterclaim in its original answer, filed on November 9, 2015.  The first amended complaint, which added collective action allegations, was filed on September 14, 2016 and the first amended answer, which included the counterclaim, was filed two weeks later, on September 28, 2016.  The delay of almost a year between defendant's initial answer and the filing of the counterclaim, along with the temporal proximity between plaintiffs' filing of the amended complaint and defendant's counterclaim, lead to an inference of causation.  See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) (finding a five-month gap sufficient to find temporal proximity); Santi v. Hot in Here, Inc., No. 18 CV

3028, 2019 WL 290145 at *5 (S.D.N.Y. Jan. 22, 2019) (finding that defendants' counterclaim, which was filed one month after plaintiff filed her complaint, was temporally proximate). Therefore, plaintiffs have established the third prong of a prima facie case of retaliation.

Because plaintiffs have established a prima facie case of retaliation, the burden is on defendant to offer a legitimate non-retaliatory reason for its actions. Defendant's only argument in response to plaintiffs' retaliation claim is that it should be held immune from the retaliation claim under "Noerr-Pennington immunity which posits that if the litigation is not objectively baseless, the litigant is immune from a claim that it instituted the lawsuit for ulterior motives." (Def.'s Mem. at 4.) As previously discussed, defendant's counterclaim is legally baseless. Furthermore, defendant's invocation of "Noerr-Pennington immunity" is misplaced because the doctrine does not apply to this action.[5] Defendant has not offered any reason, let alone a legitimate non-retaliatory reason, for its decision to assert a counterclaim against plaintiffs. There is no genuine dispute of material fact that precludes granting summary judgment for plaintiffs on this claim. Therefore, I recommend that plaintiffs' motion for summary judgment be granted with respect to defendant's liability for retaliation.

---

[5] "The Noerr-Pennington doctrine refers to a trilogy of Supreme Court cases, Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961), United Mine Workers v. Pennington, 381 U.S. 657 (1965), and California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972), holding that activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the 'sham exception' to the doctrine." EDF Renewable Dev., Inc. v. Tritec Real Est. Co., Inc., 147 F. Supp. 3d 63, 68 (E.D.N.Y. 2015) (citing Suburban Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98, 99 (2d Cir. 1983)). This action does not have anything to do with activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition or antitrust liability.

6.  <u>Damages</u>

Plaintiffs move for summary judgment on the issue of bifurcated damages

calculations and the establishment of a standard by which to calculate such damages.  (Pls.'

Mem. at 17.)  Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid

prejudice, or to expedite and economize, the court may order a separate trial of one or more

separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a

separate trial, the court must preserve any federal right to a jury trial."  FED. R. CIV. P. 42(b).

Application of Rule 42(b) is within the trial court's discretion.  <u>Getty Petroleum Corp. v. Island</u>

<u>Transp. Corp.</u>, 862 F.2d 10, 15 (2d Cir. 1988), <u>cert. denied sub nom.</u>, <u>Getty Petroleum Corp. v.</u>

<u>Salem Heat and Petroleum Corp.</u>, 490 U.S. 1006 (1989).  "To determine whether bifurcation is

warranted, courts generally consider the following three factors: 1) whether significant resources

would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3)

whether bifurcation will lead to repeat presentations of the same evidence and witnesses."

<u>WeddingChannel.Com Inc. v. The Knot, Inc.</u>, No. 03 CV 7369, 2004 WL 2984305, at *1

(S.D.N.Y. Dec. 23, 2004) (citation and quotation marks omitted).  The moving party bears the

burden of establishing that bifurcation is warranted.  <u>Id.</u> (citing <u>Dallas v. Goldberg</u>, 143 F. Supp.

2d 312, 315 (S.D.N.Y. 2001)).  In all cases, bifurcation is the exception not the rule.  <u>See, e.g.</u>,

<u>Computer Assocs. Int'l, Inc. v. Simple.com, Inc.</u>, 247 F.R.D. 63, 67 (E.D.N.Y. 2007); <u>Kos</u>

<u>Pharms, Inc. v. Barr Labs., Inc.</u>, 218 F.R.D. 387, 390-91 (S.D.N.Y. 2003).

Plaintiffs request bifurcation of damages calculations "because the calculations

for the amounts owed to each Plaintiff will depend largely on the Court's rulings as to these

matters[.]"  (Pls.' Mem. at 19.)  Furthermore, plaintiffs contend that the measure of damages for

their unpaid wages should be the amount of unpaid wages plus liquidated damages.  (Pls.' Mem.

22

at 18.)  Defendant has neither disputed nor responded to this claim; however, plaintiffs have not

established that bifurcation is warranted.  Additionally, the genuine disputes of material fact

related to plaintiffs' entitlement to "blended rates" and liquidated damages preclude summary

judgment on the standards by which damages should be calculated.  Moreover, defendant

disputes the dates of plaintiffs' employment because several dates precede the date the Family

Pediatric Care began operating as a newly organized division of defendant.  (Def.'s Rule 56.1

Statement at 3.)   I recommend that summary judgment on the issue of bifurcated damages and

the method of calculating damages be denied.

## II.  Defendant's Motion for Summary Judgment

Defendant cross-moves pursuant to Rule 56 of the Federal Rules of Civil

Procedure for an order dismissing several of plaintiffs' causes of action as legally unsupportable

and factually insufficient.  (Def.'s Cross Mot.; see also Def.'s Mem. at 2.)[6]  Where the parties

make cross-motions for summary judgment, the standard is the same.  Madelaine Chocolate

Novelties v. Great N. Ins. Co., 399 F. Supp. 3d 3, 8 (E.D.N.Y. 2019).  "The district court must

evaluate each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration."  Id. (quoting

Marotta v. Road Carrier Local 707 Welfare Fund, 100 F. Supp. 2d 145, 155 (E.D.N.Y. 2000)).

Even where both parties assert the absence of any genuine issue of material fact, the court need

not enter judgment for either party.  Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y.

2009) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

---

[6] Plaintiffs request that the court "preclude, strike, and/or disregard" certain evidence submitted by defendant in its response and cross-motion because it did not disclose such evidence previously in discovery.  (Pls.' Reply at 7-10.)  The court has not relied upon any of the evidence that plaintiffs take issue with in making its recommendations on defendant's cross-motion.

Defendant has not submitted a statement of facts pursuant to Rule 56.1 to support

its cross-motion for summary judgment.   Local Civil Rule 56.1(a) provides:

> Upon any motion for summary judgment pursuant to Rule 56 of
> the Federal Rules of Civil Procedure, there shall be annexed to the
> notice of motion a separate, short and concise statement, in
> numbered paragraphs, of the material facts as to which the moving
> party contends there is no genuine issue to be tried.  Failure to
> submit such a statement may constitute grounds for denial of the
> motion.

LOC. CIV. R. 56.1(a).  "The purpose of the rule is to aid courts in deciding summary judgment

motions quickly, and it is strict – failure to comply may result in denial of the motion."

Napoleon v. 5665 Sunrise Hwy Corp., No. 18 CV 5703, 2020 WL 6385309, at *3 (E.D.N.Y. July

30, 2020), report and recommendation adopted, 2020 WL 5757534 (E.D.N.Y. Sept. 28, 2020)

(citing T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009); Davis v. Town of

Hempstead, No. 14 CV 903, 2019 WL 235644, at *2 (E.D.N.Y. Jan. 16, 2019); Bristol v.

Schenk, No. 14 CV 6647, 2017 WL 9485715, at *5 (E.D.N.Y. July 31, 2017) (recommending

denial of summary judgment motion due to failure to comply with Local Civil Rule 56.1); KBM

World Wide, Inc. v. Hangover Joe's Holding Corp., No. 15 CV 7254, 2017 WL 685606, at *2

(E.D.N.Y. Feb. 21, 2017) ("The failure to file a Rule 56.1 Statement, is, on its own, grounds for

denial of a motion for summary judgment.")).

Defendant has repeatedly failed throughout this case to provide legal analysis to

support its own positions or to respond to plaintiffs' arguments.  (See, e.g., Order, filed Jan. 31,

2022 ("The Court's consideration of the pending summary judgment motions has been impeded

by the various deficiencies in Defendant's submissions in connection with these motions.").)

Defendant has been specifically warned that the failure to comply with Local Civil Rule 56.1 by

annexing a short and concise statement to any motion for summary judgment of the material

facts as to which it contends there is no genuine issue to be tried may result in denial of the

motion for summary judgment.  (Id.)  Although denying defendant's cross-motion for summary judgment based on the deficiencies in its motion would be justified, I will nevertheless address each of defendant's claims in the interest of completeness.[7]

      1.  Plaintiffs' NYLL Claims

Defendant moves for summary judgment on plaintiffs' second cause of action for overtime pay and other damages under the NYLL as "factually unsustainable and contrary to statutory, regulatory and legal authority[.]"  (Def.'s Cross Mot.)  Specifically, defendant contends that registered nurses are excluded from the class of "employee" under the professional capacity exemption of the NYLL.  (Def.'s Mem. at 2 (citing N.Y. COMP. CODES R. & REGS. tit. 12, § 142-3.12; Gordon v. Kaleida Health, No. 08 CV 378S, 2012 WL 432885, at *5 (W.D.N.Y. Feb. 9, 2012)).)

With respect to the professional capacity exception, "New York law differs from federal law . . . in that to establish the exception, the employer need not satisfy a 'salary' test, only a duties test."  Dingwall v. Friedman Fisher Assocs., 3 F. Supp. 2d 215, 220 (N.D.N.Y. 1998); see also Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181, 187 (E.D.N.Y.

---

[7] However, the court will not address defendant's fourth point related to its participation in the Medicaid Waiver Program.  The purpose of this section is unclear, as defendant does not request any sort of relief or posit any argument.  (See Def.'s Mem. at 5.)  Furthermore, Judge Matsumoto previously found that "the Waiver Program and CAH I/II do not preclude application of the FLSA overtime requirement."  (Memorandum and Order, dated July 17, 2018, Dkt. No. 61, at 9-15.)  "Relatedly, it is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto."  Knight v. Nassau Cnty., No. 17 CV 958, 2019 WL 3817392, at *4 (E.D.N.Y. Aug. 14, 2019) (citing N.Y.S. Teamsters Conf. Pension & Ret. Fund. v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")); see also United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation . . . . [I]n the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.") (citation and quotation marks omitted).

2004).  The employer must only show that the employee was primarily engaged in work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study[.]"  N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.14(c)(4)(iii)(a).  The language set forth in the New York Compilation of Codes, Rules and Regulations is almost identical to that used in 29 C.F.R. § 541.301(a), which outlines the duties test for professionals under the FLSA.  See 29 C.F.R. § 541.301(a) ("the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction").  According to 29 C.F.R. § 541.301(e)(2), nurses "who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption."  Id. § 541.301(e)(2).

Courts in this Circuit have made clear that determining whether the professional exemption of the NYLL applies is a fact-intensive inquiry that requires an examination of the actual duties performed.  See Isett v. Aetna Life Ins. Co., 947 F.3d 122, 129-30 (2d Cir. 2020).  The burden is on the defendant to establish that the professional exemption applies because it is an affirmative defense.[8]  See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 91 n.7 (2d Cir. 2013); see also Davella v. Ellis Hosp., Inc., No. 20 CV 726, 2021 WL 1791889, at *3 (N.D.N.Y. May 5, 2021).  However, "courts considering NYLL overtime claims have applied federal law to conclude that registered nurses . . . meet the test for professional employment and so are exempt from New York's overtime provisions."  Hinterberger v. Cath. Health Sys., 299 F.R.D. 22, 34 (W.D.N.Y. 2014); see also Isett., 947 F.3d at 131 ("There is no dispute that registered nurses typically use advanced knowledge in the exercise of their profession.  Indeed, the work of

---

[8] Defendant asserted this claim as an affirmative defense in the Second Amended Answer.  (See Second Am. Answer ¶¶ 21-26.)

registered nurses is predominantly intellectual in character, as they use their special knowledge and skills to analyze, interpret, or make deductions from varying circumstances relating to each individual patient."); Bachayeva v. Americare Certified Special Servs., Inc., No. 12 CV 1466, 2013 WL 1171741, at *5 (E.D.N.Y. Mar. 20, 2013) (dismissing registered nurses' claim for relief for failure to pay wages for time worked and to pay overtime wages pursuant to the NYLL); Gordon, 2012 WL 432885, at *4-5 (noting that registered nurses who are hourly employees are exempt from New York's overtime protection); Bongat, 341 F. Supp. 2d at 187 (dismissing NYLL overtime claims with respect to the registered nurse plaintiff and all similarly situated registered nurses).

Defendant does not cite to any facts to support its claim that registered nurses are exempt from the protections of the NYLL. Plaintiffs argue that defendant has failed to carry its burden to prove by a preponderance of the evidence that plaintiffs should in fact be exempt from the protections of the NYLL. (Pls.' Reply at 3 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002) (exemptions are affirmative defenses for which defendants bear the burden of proof).) However, plaintiffs do not dispute that they were employed by defendant as registered nurses. (See Second Am. Compl. ¶¶ 14, 15 (identifying plaintiffs as registered nurses).) Therefore, there is no genuine dispute of material fact related to whether plaintiffs meet the test for professional employment and are exempt from New York's overtime provisions. I recommend that defendant's motion for summary judgment be granted on plaintiffs' NYLL claim.[9]

---

[9] Plaintiffs argue that even if they were exempt from certain portions of the NYLL under the "professional" exemption, they are not categorically excluded from all protections of the NYLL. (Pls.' Reply at 3.) Plaintiffs specifically argue that they are not exempt from the protections of Section 193 of the NYLL. (Pls.' Mem. at 5-6 ("Relevant here, Plaintiffs remain covered

(Continued . . . )

2.  <u>Liquidated Damages</u>

Defendant moves for summary judgment on plaintiffs' claim for liquidated damages on the ground that defendant can show good faith and reasonableness when it ceased paying overtime wages.  (Def.'s Mem. at 3-4.)  As discussed above, there is a genuine dispute of material fact related to the issue of liquidated damages.  Therefore, I recommend that defendant's motion for summary judgment be denied on the issue of liquidated damages.

3.  <u>Defendant's Counterclaim</u>

Defendant moves for summary judgment on plaintiffs' claim that defendant's counterclaim was retaliatory, asserting that the claim is meritless.  (<u>Id.</u> at 4.)  For the reasons discussed above, I recommend that summary judgment on defendant's counterclaim be granted in plaintiffs' favor.  Therefore, I recommend that defendant's cross-motion for summary judgment related to the counterclaim be denied.

---

"employees" whose wages cannot be subject to impermissible deductions.").)  Even if this were the case, as discussed above, plaintiffs have not established a valid claim under Section 193. Furthermore, the cases cited by plaintiffs do not support their claim that they are nevertheless entitled to some protections under the NYLL despite being exempt from overtime protections. <u>See</u> <u>Scarpinato v. E. Hampton Point Mgmt. Corp.</u>, 2015 N.Y. Slip Op. 31633 (N.Y. Sup. Ct. 2015) ("Under the latter section of the Labor Law, liquidated damages and attorney's fees generally available to a successful litigant are not available to employees who are employed in a managerial or executive capacity. . . . They are also not available to employees whose principal activity is of a supervisory, managerial, executive or administrative nature[.]") (citations omitted); <u>Ryan v. Kellogg Partners Institutional Servs.</u>, 19 N.Y.3d 1, 16 (N.Y. 2012) (does not discuss NYLL exemptions); <u>Giuntoli v. Garvin Guybutler Corp.</u>, 726 F. Supp. 494, 509 (S.D.N.Y. 1989) (same); <u>Pachter v. Bernard Hodes Grp., Inc.</u>, 541 F.3d 461, 463-64 (2d Cir. 2008) (stating that Article 6, Section 193 includes executives unless otherwise excluded but not discussing the professional exemption or its relation to Section 193).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion for summary judgment be granted on (1) defendant's liability for unpaid overtime wages; (2) the issue of prompt payment under the FLSA as it relates to plaintiffs' unpaid overtime wages; (3) defendant's counterclaim; and (4) defendant's liability for retaliation.  I further recommend that plaintiffs' motion for summary judgment be denied related to (1) the issue of "blended rates"; (2) the claim that defendant made illegal deductions to wages under the NYLL; (3) liquidated damages and defendant's willfulness; and (4) bifurcation of damages.  I respectfully recommend that defendant's cross-motion for summary judgment be granted on plaintiffs' exempt status under the NYLL and denied on the issues of liquidated damages and the counterclaim.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
       April 11, 2023